UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

UNITED STATES OF AMERICA  :
:
v.  :
:  C.A. No. 22-00332-WES
RICHARD H. HATCH, JR., et al.  :
:

# REPORT AND RECOMMENDATION

Lincoln D. Almond, United States Magistrate Judge

Pending before me for report and recommendation (28 U.S.C. § 636(b)(1)(B)) are (1) the United States' Motion for Summary Judgment as to both its Complaint and Ms. Hatch's Counterclaim (ECF No. 63); (2) Ms. Hatch's Motion for Summary Judgment as to her Counterclaim and Count II of the Complaint (ECF No. 64); and (3) Mr. Hatch's Motion to Dismiss, or in the alternative, for Summary Judgment as to the Complaint.[1] (ECF No. 65).

This is a civil action brought by the United States seeking, in Count I, entry of final judgment against Richard H. Hatch, Jr. for unpaid federal income tax liabilities and, in Count II, to enforce federal tax liens regarding such liabilities filed against two residential properties located at 21 and 23 Annandale Road in Newport, Rhode Island. The United States alleges that these properties were fraudulently transferred by Mr. Hatch to his sister, Kristin M. Hatch, to avoid collection efforts of his creditors, including the United States. It contends that Ms. Hatch holds title as the "mere nominee" of Mr. Hatch, and, alternatively,

---

[1] Mr. Hatch makes clear that if his Motion challenging Count I is unsuccessful and he does not obtain his requested relief including an order vacating his "wrongful conviction and sentence," he "will concede with respect to Count I rather than attempt to rectify at trial what appears to [him] to be the original Court's egregious partiality and overstepping of bounds." (ECF No. 65 at p. 23).

that the fraudulent transfers to Ms. Hatch are legally void and should be set aside. Ms. Hatch has filed a Counterclaim against the United States seeking to quiet title to her two properties and free them of the improperly placed tax liens.

**Background**

Mr. Hatch's tax troubles originally came before this Court in early 2005 pursuant to a Criminal Information and a Plea Agreement executed by Mr. Hatch and his defense counsel. United States v. Hatch, 1:05-cr-0009-ECT. Shortly before his change of plea hearing, Mr. Hatch changed counsel and exercised his right to back out of the agreement to plead guilty, and the Criminal Information charging him with two counts of filing false tax returns was dismissed without prejudice.

The Government subsequently presented its case to the Grand Jury, and Mr. Hatch was indicted on felony charges of tax evasion and fraud. United States v. Hatch, 1:05-cr-0098-ECT. After a ten-day jury trial, Mr. Hatch was found guilty of filing false personal income tax returns for years 2000 and 2001 and a false corporate income tax return for year 2001 for an S-corporation he created, Tri-Whale Enterprises, Inc. (ECF No. 49 in 1:05-cr-0098-ECT). He was found not guilty on seven fraud charges. Id.

Mr. Hatch unsuccessfully appealed his criminal conviction. United States v. Hatch, 514 F.3d 145 (1st Cir. 2007), cert. denied, 555 U.S. 820 (2008). His request for post-conviction relief pursuant to 28 U.S.C. § 2255 was also denied by this Court in 2011 and unsuccessfully appealed. United States v. Hatch 2011 WL 1750706 (D.R.I. May 9, 2011). Thus, Mr. Hatch's criminal conviction stands and is not subject to further challenge.

As to the underlying tax obligations, the bulk of the IRS assessment relates to the 2000 and 2001 tax years for which Mr. Hatch was found guilty of criminal tax evasion. For

2000, it includes tax owing on Mr. Hatch's prize money from the Survivor television program exceeding $1,000,000.00, as well as $18,708.00 in unreported rental income and $25,000.00 in charitable contributions diverted to personal use. 2011 WL 1750706, *1. For 2001, it includes tax owing on roughly $320,000.00 received as compensation for work co-hosting a radio show,[2] $9,396.00 in unreported rental income, prize proceeds in the amount of $27,074.00 representing the value of a car awarded to Mr. Hatch on Survivor, and $11,500.00 in charitable contributions diverted to personal use. Id. As to 2012, Mr. Hatch filed a tax return reporting taxes of $2,916.00 which remain substantially unpaid. (ECF No. 63-24).

In 2010, the IRS issued a Notice of Jeopardy Assessment and Right of Appeal to Mr. Hatch regarding tax years 2000 and 2001. (ECF No. 63-47). On June 2, 2010, Mr. Hatch filed a pro se Petition with the U.S. Tax Court disputing these proposed tax deficiencies and penalties. See Hatch v. Comm'r of Internal Revenue, No. 12573-10.[3] Mr. Hatch later retained counsel and was ultimately represented by Attorney Levins as of February 16, 2012. Attorney Levins now represents Ms. Hatch in this matter. On February 27, 2012, Attorney Levins filed a pleading with the Tax Court agreeing that Mr. Hatch was liable for a fraud penalty under Internal Revenue Code § 6663 and that the "only remaining genuine issue of material fact for trial is that [Mr. Hatch] disputes the amount of underpayment of tax for the

---

[2] This income was the subject of Count III of the Indictment and Mr. Hatch's conviction for filing a false tax return for Tri-Whale Enterprises, Inc. (an S-corporation founded by Mr. Hatch) which did not report such income. 514 F.3d at 150.

[3] Mr. Hatch does not dispute that the Petition was filed but claims that he did not personally file it and has no knowledge of what it contained or whether his representative raised the issue of taxes being owed to Malaysia. (ECF No. 75 at p. 17). This assertion is not credible as the Tax Court docket reflects that Mr. Hatch himself filed the Petition, and counsel did not enter an appearance until March 7, 2011. Further, the Petition is hand-signed by Mr. Hatch and the "Relief Requested" narrative accompanying the Petition was clearly drafted by Mr. Hatch and not a lawyer.

tax years 2000 and 2001." Attorney Levins also represented that Mr. Hatch agreed with certain assertions made by the Commissioner including the following:

> The prior criminal convictions of petitioner under I.R.C. § 7201 for the taxable years 2000 and 2001 are conclusive and binding on petitioner. Accordingly, under the doctrine of collateral estoppel, petitioner is estopped from denying that he willfully filed false and fraudulent income tax returns for the taxable years 2000 and 2001 with intent to evade and defeat a part of the income taxes due and owing by him for those years, and that due to such fraud there is an underpayment of tax within the meaning of I.R.C. § 6663.

Document No. 23 at pp.4-5; see also Document No. 28 in Docket No. 12573-10 (U.S. Tax Court). The matter was scheduled for trial on March 26, 2012. However, the docket shows that the trial did not go forward, and, on April 6, 2012, the U.S. Tax Court entered a stipulated decision wherein Mr. Hatch, through his then counsel Attorney Levins, agreed to the 2000 and 2001 tax assessments and penalties sought by the IRS and at issue in this case. (ECF Nos. 62, ¶ 30 and 63-23).

### Discussion

#### A. Standard of Review

A party may move for summary judgment under Rule 56 if the movant can show that there is "no genuine dispute as to any material fact" such that they are "entitled to judgment as a matter of law." Fed. R. Civ. P. 56. "Summary judgment is a 'drastic remedy' because it deprives the parties of the right to a jury trial under the Seventh Amendment." Ripoli v. Dep't of Human Servs., Office of Veterans Affairs, No. 1:17-CV-225-JJM-LDA, 2023 WL 7920473, at *1 (D.R.I. Nov. 16, 2023) quoting Colman v. Faucher, 128 F. Supp. 3d 487, 490 (D.R.I. 2015). "As such, all factual disputes are viewed in the light most favorable to the nonmoving party." Id. "The purpose is to 'secure the just, speedy, and inexpensive

determination of every action' by resolving claims that have no factual basis." Id. quoting Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). A dispute is deemed to be genuine if "a reasonable jury could resolve the point in favor of the nonmoving party." Staples v. Gerry, 923 F.3d 7, 12-13 (1st Cir. 2019). A fact is deemed to be material if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "The Court will not consider factual disputes that are irrelevant or unrelated to the substantive law at issue in the case." Ripoli, 2023 WL 7920473 at *1 citing Anderson, 477 U.S. at 248.

### B. Count I

In Count I, the United States seeks to reduce Mr. Hatch's unpaid income tax liabilities to a civil judgment. (ECF No. 1 at pp. 6-8). The United States and Mr. Hatch cross-move for summary judgment on Count I.

The United States argues that, as a matter of law, Mr. Hatch is estopped and barred by the April 6, 2012 Tax Court decision from contesting the taxes and penalties assessed for 2000 and 2001, and by the jury conviction in his criminal tax evasion case from contesting the fraud penalties assessed against him pursuant to 26 U.S.C. § 6663. Id. The United States is correct on both legal points. See Comm'r v. Sunnen, 333 U.S. 591, 598 (1948); and Kawashima v. Holder, 565 U.S. 478, 487 (2012).

Mr. Hatch does not rebut these legal principles or otherwise present any viable arguments as to Count I. Rather, Mr. Hatch improperly seeks to relitigate his criminal conviction and sentence and disavow the prior Tax Court proceeding. He makes sweeping and unsupported claims that his conviction and subsequent proceedings were tainted by prosecutorial misconduct and judicial bias. In fact, Mr. Hatch's Motion as to Count I makes

the unsupported and inappropriate request in the context of this civil IRS collection action that the Court vacate his "wrongful [2006] conviction and sentence" or, alternatively, grant him a "new trial with appropriate safeguards to ensure a fair and impartial process." (ECF No. 65 at p. 23). Mr. Hatch's criminal conviction has been sustained both on direct appeal and after postconviction review under 28 U.S.C. § 2255. There is absolutely no legal basis for Mr. Hatch's attempt to relitigate and challenge his 2006 criminal conviction in this case.

While the 2000 and 2001 tax liabilities are plainly put to bed by the 2006 criminal conviction and the 2012 Tax Court decision, the 2012 tax liability appears to be simply a matter of nonpayment. (ECF Nos. 63-5 and 63-8). Mr. Hatch filed a return for 2012 reporting tax due in the amount of $2,916.00. (ECF No. 63-24). It appears from the record that Mr. Hatch has made no payments towards this tax liability other than $10.00 in taxes withheld and a $175.00 payment on September 5, 2013. (ECF No. 63-8). The United States asserts that the balance due with interest and penalty for 2012 is $5,170.87 as of May 13, 2024. (ECF Nos. 62, ¶ 38; 63 at p. 19). Mr. Hatch concedes in his opposition brief that the 2012 balance due amount is "undisputed." (ECF No. 75, ¶ 38).

The United States' Motion as to Count I is both supported by the record and effectively unrefuted by Mr. Hatch. Accordingly, the United States has met its burden under Rule 56(a), Fed. R. Civ. Proc., of establishing that there is no genuine issue of material fact present as to Count I and that it is entitled to judgment as a matter of law. Even if there was any doubt as to that showing, Mr. Hatch plainly concedes the matter. As noted previously, he makes clear that, if his criminal conviction is not vacated by the Court, as requested, he "will concede with respect to Count I." (ECF No. 65 at p. 23). Since there is absolutely no legal basis to revisit and vacate Mr. Hatch's affirmed criminal conviction in this civil tax

collection case, the Court accepts his concession of liability as to Count I. Accordingly, I recommend that Mr. Hatch's Motion be DENIED as to Count I and the United States' Motion be GRANTED as to Count I.

### C.  Count II

In Count II, the United States seeks to enforce its federal tax liens as to Mr. Hatch against the 21 and 23 Annandale properties and seeks a judicial sale of such properties. Ms. Hatch counterclaims to release the tax liens and quiet title to the properties.

All parties have cross-motioned for summary judgment as to Count II, and Ms. Hatch and the United States have cross-motioned as to her Counterclaim. The chain of title and overall history of the two properties is somewhat complex. While it is clear that the two properties were once owned by Mr. Hatch and are now purportedly owned by Ms. Hatch, the circumstances of those transfers and Mr. Hatch's continued involvement with the properties is more opaque.

Here, the United States alleges that Mr. Hatch fraudulently transferred title to both properties to Ms. Hatch with fraudulent intent as against his creditors, including the United States. It claims that the transfers were for nominal or no consideration at a time when Mr. Hatch knew he was facing a criminal tax investigation and was effectively insolvent. As to the 21 Annandale Road property, Mr. Hatch purchased it in 1994 and ultimately transferred title jointly to himself and Ms. Hatch, and then solely to Ms. Hatch in 2005 by quitclaim deed (both transfers took place after the criminal information in Case No. 1:05-cr-9 was filed and dismissed but prior to Mr. Hatch's indictment in Case No. 1:05-cr-98). The 23 Annandale Road property was conveyed jointly to Mr. Hatch and Ms. Hatch in 2002 and, in 2003, Mr. Hatch conveyed his 50% interest to Ms. Hatch by quitclaim deed.

Ms. Hatch has demanded a jury trial triggering the inherent tension between that Seventh Amendment right and Rule 56's procedural gatekeeping function. A movant under Rule 56 bears the heavy burden of showing that no reasonable jury could return a verdict in favor of the non-movant even when the record and any resulting inferences are taken in favor of the non-movant. Further, this review should be "most searching in cases, such as this, that turn upon the issue of motive or intent...[as] these difficult questions are most suited for jury determinations, as proof is generally based on inferences that must be drawn." Rossy v. Roche Prods., Inc., 880 F.2d 621, 624 (1st Cir. 1989).

First, as to Mr. Hatch and Ms. Hatch's Motions regarding Count II and the Counterclaim, they both fall woefully short of meeting their Rule 56 burden that there is not a trial worthy issue of fraudulent transfer as to both properties on this record. Under Rhode Island law, a transfer is fraudulent when it "is made (1) with actual intent to defraud, or (2) for less than adequate consideration when, before or after the transfer, the debtor is insolvent." United States v. Verduchi, No. 03-139-T, 2005 WL 1027017, *4 (D.R.I. Apr. 25, 2005), aff'd, 434 F.3d 17 (1st Cir. 2006) (applying R.I. Gen. Laws § 6-16-4). The totality of the evidence presented by the United States is plainly suggestive of fraud. For instance, these were inter-family transfers by quitclaim deed and not arms-length market sales. There is no clear record of the sales price for either property, and the respective deeds reflect that no documentary stamps were required and thus no taxable consideration was paid. Ms. Hatch confusingly attempts to piece together a trail of consideration through the assumption or refinancing of mortgages and canceled checks purportedly representing "down payments."[4] It is further undisputed that Mr. Hatch has lived rent-free at 21 Annandale and

---

[4] The picture is made even murkier by the absence of any definitive fair market value of the properties at the time of the transfers.

has been heavily involved in the renovation and rental of 23 Annandale. Finally, all of these circumstances must be considered in the context of timing. Mr. Hatch transferred his interests in both properties to Ms. Hatch after the 2000 and 2001 tax years in issue at a time when he was actively under tax examination and criminal investigation.

Mr. Hatch and Ms. Hatch have simply not shown that there are no genuine disputes of fact as to the consideration Ms. Hatch paid to acquire either property and whether Ms. Hatch, and not Mr. Hatch, is actually exercising dominion and control over the properties. While the United States presents a stronger argument, it is the party with the burden of proof as to Count II, and it has also failed to show the absence of any trial worthy issues. Count II involves allegations of fraud and intent which the United States supports almost exclusively by consideration of the totality of the circumstances and the inferences to be drawn from such circumstances. After thoroughly reviewing the parties' lengthy submissions, it is impossible for the Court to enter summary judgment either for or against any party as to Count II and the Counterclaim without impermissibly weighing evidence and drawing inferences. In fact, neither side paints a clear picture of this factual record, and many of the numerous "facts" proposed by both sides are either disputed or undisputed but with narrative "clarifications." Rule 56 and the Seventh Amendment mandate that these contested facts be evaluated by a jury and not the Court by Motion. Accordingly, I recommend that the parties' respective cross-motions as to Count II and Ms. Hatch's Counterclaim be DENIED.

### D. The Validity of the Tax Liens

Ms. Hatch raises a legal issue regarding the tax liens and whether they attached to either property. (ECF No. 64 at pp. 10, 17-18). She argues that because such liens came

into existence on April 6, 2010, at the earliest, when the 2000 and 2001 liabilities were assessed, they never attached to either property to which she obtained title in 2003 and 2005, respectively. Id. Ms. Hatch cites no legal authority supporting her position. Accordingly, I recommend that this legal argument be rejected as unsupported.

Moreover, the argument is nonsensical in this context. The United States contends that both properties were fraudulently transferred by Mr. Hatch to Ms. Hatch after Mr. Hatch's liability for his 2000 and 2001 tax years accrued. See In re Luongo,, 259 F.3d 323, 334 (5th Cir., 2001) (holding that taxpayer's liability for a tax year arose as of December 31 of that year regardless of when a return is filed). The United States "is a creditor of a taxpayer as of the date the obligation to pay income taxes accrues." United States v. Evans, 513 F. Supp. 2d 825, 834 (W.D. Tex. 2007). If the transfers are ultimately set aside as fraudulent and title reverts to Mr. Hatch, the assessment and related liens are attached. A contrary result makes no sense as it would open a loophole for a tax evader to escape liability as long as he fraudulently transfers his assets prior to a formal assessment and lien, and such potential loophole presumably accounts for the lack of any legal support provided by Ms. Hatch for this argument.

**Conclusion**

For the foregoing reasons, I recommend that:

1. Ms. Hatch's Motion for Summary Judgment (ECF No. 64) be DENIED in its entirety;

2. Mr. Hatch's Motion to Dismiss or, in the Alternative, for Summary Judgment (ECF No. 65) be DENIED in its entirety; and

3.    The United States of America's Motion for Summary Judgment (ECF No. 63) be GRANTED as to Count I and otherwise DENIED.

Any objections to this Report and Recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen days of service of this Report and Recommendation. See Fed. R. Civ. P. 72(b); DRI LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. See Brenner v. Williams-Sonoma, Inc., 867 F.3d 294, 297 n.7 (1st Cir. 2017); Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).

/s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
November 18, 2024