UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

_____
                                        )
UNITED STATES OF AMERICA,               )
                                        )
        Plaintiff,                      )
                                        )
        v.                              )    C.A. No. 22-332 WES
                                        )
RICHARD H. HATCH, JR., et al.,          )
                                        )
        Defendants.                     )
_____)


### AMENDED MEMORANDUM AND ORDER

WILLIAM E. SMITH, Senior District Judge.

        Plaintiff United States of America brings this case to collect on unpaid tax debt by Defendant Mr. Richard H. Hatch, Jr.  Compl., Dkt. No. 1.  Defendant Ms. Kristin M. Hatch (sister of Mr. Hatch) sues in counterclaim.  Def. Kristin M. Hatch's Answer, Affirmative Defs. & Countercl. ("Answer & Countercl.") 10, Dkt. No. 27.  Pending before the Court are cross-motions for summary judgment, filed by each of these three parties.  Pl./Countercl. Def. USA's Mot. Summ. J. ("Gov't's Mot."), Dkt. No. 63; Def./Counter-Pl.'s Mot. Summ. J. ("Ms. Hatch's Mot."), Dkt. No. 64; Def. Richard H. Hatch, Jr.'s Mot. Dismiss or Summ. J. ("Mr. Hatch's Mot."), Dkt. No. 65.

        At the Court's request, Magistrate Judge Lincoln D. Almond provided a Report and Recommendation as to the disposition of these

motions.  R. & R., Dkt. No. 85.  All parties object to some part of that Report and Recommendation.  USA's Obj. R. & R. ("Gov't's Obj."), Dkt. No. 87; Agreement & Obj. Def. Counter-Pl. Kristin Hatch R. & R. ("Ms. Hatch's Obj."), Dkt. No. 88; Def. Richard H. Hatch, Jr.'s Resp. R. & R. ("Mr. Hatch's Obj."), Dkt. No. 89.

After considering the parties' objections and reviewing the matters involved de novo, the Court adopts in part and modifies in part the Report and Recommendation.  For the reasons below, the Court GRANTS IN PART and DENIES IN PART the Government's Motion and DENIES the Hatches' Motions.

I. BACKGROUND

   A. The Tax Debt

The factual history of this case stretches back nearly twenty-five years.  In 2000, Mr. Hatch won the inaugural season of the reality television show "Survivor."  Pl./Countercl. Def. USA's Statement Undisputed Material Facts ("Gov't's SUMF") ¶ 3, Dkt. No. 62.  His prize winnings totaled one million dollars.  Id. ¶ 4.  And the golden goose kept giving, as his newfound fame brought him more financial opportunities over the next few years.  See id. ¶¶ 5, 12.

During those heady days, Mr. Hatch "was more solvent than ever in [his] life."  Id. ¶ 80 (alteration in original) (quoting Gov't's Mot. Ex. 16, at 107:16-17, Dkt. No. 63-18).  Relevant to this lawsuit is a specific purchase that he made during this

period: in 2002, he and Ms. Hatch jointly acquired real estate located at 23 Annandale Road, Newport, Rhode Island ("23 Annandale").  Id. ¶¶ 70-74.  This property became one of many in Mr. Hatch's real estate portfolio, which also included 21 Annandale Road, Newport, Rhode Island ("21 Annandale").  Id. ¶¶ 21-22, 42.

But Mr. Hatch's good fortune was not to last; the money was gone by April 2005.  Id. ¶¶ 57-58.  By that time, he had fully transferred both the 21 and 23 Annandale properties to Ms. Hatch because he could no longer afford to keep them.  Id. ¶¶ 57, 86.

Things would get worse.  Mr. Hatch did not pay the full income taxes due on his Survivor and Survivor-related earnings for tax years 2000 and 2001.  Id. ¶ 12.  For several years, there seemed to be no consequences for this dilatory conduct.  See id. ¶¶ 7-10.  But in January 2005, federal prosecutors formally accused him of tax evasion.  Id. ¶ 16.  And in January 2006, a jury convicted him of criminal tax evasion for both 2000 and 2001.  Id. ¶ 24. The Court sentenced him to a fifty-one-month term of incarceration, followed by three years of supervised release, and ordered him to file amended tax returns and pay all remaining taxes due.  Id. ¶¶ 25-26.  He did not comply.[1]  Id. ¶ 28.

Years passed, and in February 2010, the Internal Revenue

---

[1] The Court later found that this failure violated a term of Mr. Hatch's supervised release and sentenced Mr. Hatch to an additional incarceration period of nine months.  Pl./Countercl. Def.

Service sent Mr. Hatch "a Notice of Deficiency for the unassessed tax liabilities" for 2000 and 2001.  Id. ¶ 29.  On April 6, it formally assessed Mr. Hatch with outstanding taxes and penalties of more than one million dollars for those same tax years.  Id. ¶ 30.  It also sent him a "Notice of Jeopardy Assessment and Right of Appeal," notifying him of its formal tax liability assessment and its belief that he transferred his ownership interest in both 21 and 23 Annandale for little or no consideration.  Id. ¶ 31.

Then, on April 9, 2010, the IRS filed a Notice of Federal Tax Lien "against all property and rights to property belonging to [Mr. Hatch] for his unpaid federal income tax liabilities for the 2000 and 2001 tax years."[2]  Id. ¶ 98.  It also issued Ms. Hatch a Notice of Federal Tax Lien, "as the nominee, transferee, or alter ego of [Mr. Hatch], for his unpaid federal income tax liabilities for the 2000 and 2001 tax years."  Id. ¶ 102.  The Notice issued to Ms. Hatch identified 21 and 23 Annandale as properties that the IRS claimed attached to the tax lien.[3]  Gov't's Mot. Ex. 12, Dkt.

_____

USA's Statement Undisputed Material Facts ("Gov't's SUMF") ¶ 34, Dkt. No. 62.

[2] The tax lien identified in this Notice was later released, reinstated, and timely refiled, such that it is still in effect.  Id. ¶¶ 99, 101.

[3] The tax lien detailed in this Notice, attaching to 21 and 23 Annandale, was also later released and then reinstated.  Id. ¶¶ 103-104.  The lien was then superseded by another lien issued in 2021, attaching to the same properties, for Mr. Hatch's tax debt

No. 63-14.

About two years later, in April 2012, Mr. Hatch reached an agreement with the IRS on the amount of his delinquent tax liabilities for 2000 and 2001, including interest and penalties. Gov't's SUMF ¶ 35. But he still did not pay the debt and instead increased it by not paying his owed income taxes for tax year 2012. Id. ¶¶ 38, 41. The IRS, in January 2015, filed another Notice of Federal Tax Lien against Mr. Hatch's property for his 2012 tax debt.[4] Id. ¶ 100.

The parties appear to have remained in this posture for another seven years, until the Government filed this lawsuit in September 2022. The total amount of Mr. Hatch's unpaid tax liabilities now exceeds $3.2 million. Id. ¶ 41.

**B. This Lawsuit**

The Government sues to collect on Mr. Hatch's tax debt. See generally Compl. In Count One of its Complaint, the Government seeks a judgment reducing Mr. Hatch's unpaid federal tax liabilities to a civil judgment, which this Court has authority to issue under 26 U.S.C. § 7402(a). Id. ¶¶ 24-32, A. In Count Two, the Government asks the Court to (1) declare valid its tax liens

---

for tax years 2000, 2001, and 2012; Notice for this lien was timely refiled and is still in effect. Id. ¶ 104.

[4] The tax lien described in this Notice was timely refiled in 2022 and is still in effect. Id. ¶ 100.

on Mr. Hatch's delinquent tax debt in accordance with 26 U.S.C. § 6321, and (2) enforce those liens by ordering the sale of both 21 and 23 Annandale under 26 U.S.C. § 7403.  Id. ¶¶ 33-64, B, E.

But Count Two of the Government's Complaint has a problem: Ms. Hatch has been the sole record-title owner of 21 Annandale since 2005 and 23 Annandale since 2003.  Id. ¶¶ 34-41.

To get around this issue, the Government asks the Court to declare that Mr. Hatch is "the true and equitable owner of the Real Properties, or, in the alternative, that [Mr. Hatch] fraudulently transferred" them to Ms. Hatch, such that the "transfers are set aside and void."  Id. ¶ C.  The Government also seeks "an order imposing a resulting trust over the 23 Annandale Property for the benefit of the creditors of [Mr. Hatch]."  Id. ¶ D.

Ms. Hatch acknowledges that Mr. Hatch transferred the Annandale properties to her.  Answer & Countercl. 4-5.  But she denies that these transfers were in name only, without adequate consideration, or otherwise fraudulent.  Id. at 5-7.  On top of her Rule 8(b) denials, Ms. Hatch asserts numerous Rule 8(c) affirmative defenses.  Id. at 7-9.  She also counterclaims, seeking to quiet title to the properties.  Id. at 10-16.

In June 2024, the Government, Mr. Hatch, and Ms. Hatch each cross-moved for summary judgment.  See generally Gov't's Mot.; Ms. Hatch's Mot.; Mr. Hatch's Mot.  The Court referred those motions

to Magistrate Judge Almond.

Magistrate Judge Almond in turn issued a Report and Recommendation, Dkt. No. 85. He recommends that the Court deny the Hatches' respective motions. Id. at 10. He also recommends that the Court grant the Government's Motion as to Count One of its Complaint and deny the Motion as to Count Two and Ms. Hatch's counterclaim. Id. at 11.

As stated above, the parties each object to some part of that Report and Recommendation. Ms. Hatch objects to some of the recommended findings of fact related to Count Two of the Government's case and to her Counterclaim. Ms. Hatch's Obj. 4. Mr. Hatch comments on the recommended disposition of Count One of the Government's case and objects to certain of the recommended findings of fact as to Count Two. See generally, Mr. Hatch's Obj. And the Government objects to the recommended denial of its Motion as to Count Two of its case and Ms. Hatch's Counterclaim. See generally, Gov't's Obj. The Court heard oral argument on the Government's objection on March 6, 2025.

## II. DISCUSSION

### A. Legal Standards

The Court must review the Report and Recommendation and "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). The Court may then "accept,

7

reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Id. But the Court does not review anything outside of that which the parties specifically object to. See Rivera-Aponte v. Gomez Bus Line, Inc., 62 F.4th 1, 10 (1st Cir. 2023).

Because the Government's objection concerns the disposition of its motion for summary judgment, the Court notes that it must grant summary judgment to a moving party if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine when the evidence is such 'that a reasonable jury could resolve the point in favor of the nonmoving party.'" Quintana-Dieppa v. Dep't of the Army, 130 F.4th 1, 7 (1st Cir. 2025) (quoting Doe v. Trs. of Bos. Coll., 892 F.3d 67, 79 (1st Cir. 2018)). A fact is material when it has the "potential to affect the outcome of the suit under the applicable law." Id. (quoting Cherkaoui v. City of Quincy, 877 F.3d 14, 23 (1st Cir. 2017)).

The Court views "the entire record in the light most hospitable to the" nonmoving party, drawing "all reasonable inferences in that party's favor." Id. (quoting McCarthy v. Nw. Airlines, Inc., 56 F.3d 313, 315 (1st Cir. 1995)). But it will not rely on "conclusory allegations, improbable inferences, [or] unsupported speculation." Id. (alteration in original) (quoting

McCarthy, 56 F.3d at 315).

A final consideration applies with special relevance here. The Government moves to win summarily on its own legal claims. And where, as here, the "movant bears the burden of proof on a claim at trial, then its burden of production is greater." 10A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2727.1 (4th ed.). The movant "must support its motion with credible evidence." See Celotex Corp. v. Catrett, 477 U.S. 317, 331-32 (1986) (Brennan, J., dissenting) (reviewing the agreed-upon legal standard). Moreover:

> [the movant] must lay out the elements of its claim, citing the facts it believes satisfies those elements, and demonstrating why the record is so one-sided as to rule out the prospect of the nonmovant prevailing. If the movant fails to make that initial showing, the court must deny the motion, even if the opposing party has not introduced contradictory evidence in response.

Wright & Miller § 2727.1 (citation modified). As the First Circuit has put it, summary judgment is warranted for the party who bears the burden of proof at trial on the issue "only if [that party] has provided 'conclusive' evidence" in its favor. Photographic Illustrators Corp. v. Orgill, Inc., 953 F.3d 56, 65 (1st Cir. 2020) (quoting Torres Vargas v. Santiago Cummings, 149 F.3d 29, 35 (1st Cir. 1998)).

### B. Count One

The Court begins with Count One of the Government's Complaint, in which the Government asks the Court to reduce Mr. Hatch's unpaid

federal tax liabilities to a civil judgment. Compl. ¶¶ 24-32, A. Mr. Hatch and the Government both move for summary judgment. The Report and Recommendation found that the "United States' Motion as to Count I is both supported by the record and effectively unrefuted by Mr. Hatch." R. & R. 6. It therefore recommends that "Mr. Hatch's Motion be DENIED as to Count I and the United States' Motion be GRANTED as to Count I." Id. at 7; see id. at 10-11.

Mr. Hatch does not object to this recommendation but does seek to "clarify his position." Mr. Hatch Obj. 1. Really, he tries to relitigate his past legal proceedings adjudicating his unpaid tax liabilities. See id. at 1-8. This play is inappropriate and the Court need not spend any time on it; suffice to say, however, nothing he offers in argument or evidence suggests why or how the recommendation – which already considered his arguments – may have erred. See Mr. Hatch's Obj. 1-8; R. & R. 5-6.

Because Mr. Hatch fails to meaningfully object to the recommendation, the Court overrules Mr. Hatch's quasi-objection. The Court adopts the Report and Recommendation on this point and finds that the Government is entitled to summary judgment on Count One. See Rivera-Aponte, 62 F.4th at 10 (overruling objection to Report and Recommendation when objecting party failed to "point to any specific evidence or develop any particularized arguments

identifying discrete factual issues that are in dispute").

### C. Count Two & the Counterclaim

The Court next turns to Count Two of the Government's
Complaint and Ms. Hatch's Counterclaim. To repeat, in Count Two,
the Government asks the Court to (1) declare valid its tax liens
against Mr. Hatch's property and rights to property under 26 U.S.C.
§ 6321, and (2) enforce those liens by ordering the sale of 21 and
23 Annandale under 26 U.S.C. § 7403. Compl. ¶¶ 33-64, B, E.
Relatedly, in her Counterclaim, Ms. Hatch seeks to quiet title to
these properties. Answer & Countercl. 15-16.

Mr. Hatch, Ms. Hatch, and the Government each move for summary
judgment on Count Two. Ms. Hatch and the Government cross-move
for summary judgment on Ms. Hatch's Counterclaim.

Because the Report and Recommendation found that the record
was unclear as to Count Two and the Counterclaim, it determined
that "it is impossible for the Court to enter summary judgment
either for or against any party." R. & R. 9. It therefore
recommends denial of all parties' Motions on these claims. Id.
Neither Ms. Hatch nor Mr. Hatch object to this recommendation.
See generally Ms. Hatch's Obj.; Mr. Hatch's Obj. But they contest
some of Magistrate Judge Almond's factual findings. See Ms.
Hatch's Obj. 4; Mr. Hatch's Obj. 8-13.

The Government objects to the recommended denial of its Motion
on these claims. Gov't's Obj. It argues that the Report and

Recommendation erred by (1) applying the wrong legal standard to one of its arguments, (2) failing to consider its alternative arguments, and (3) relying on an inapplicable background legal principle. Id. at 2.

The Court reviews de novo the Government's Motion, 28 U.S.C. § 636(b)(1)(C), and finds the Government has met its burden to show that its tax liens are valid and enforceable as to Mr. Hatch's property and rights to property, but not that its tax liens attach to 21 and 23 Annandale. The Court therefore modifies the Report and Recommendation to conform to these findings and accordingly grants in part and denies in part the Government's Motion.

### 1. Validity of the Tax Liens

The Government holds multiple tax liens securing Mr. Hatch's tax debts, interest, and penalties against all of Mr. Hatch's "property and rights to property." Compl. ¶ B. As described above, the IRS issued notices of these liens to Mr. Hatch and to Ms. Hatch as the alleged "nominee" of Mr. Hatch for the Annandale properties. Gov't's SUMF ¶¶ 98-104. The Government asks the Court to determine that these tax liens are "valid and subsisting," and that they attach to the Annandale properties. Compl. ¶ B.

Section 6321 lays out the governing rule:

If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of

12

the United States upon all property and rights to
property, whether real or personal, belonging to such
person.

26 U.S.C. § 6321.  Any lien imposed under this provision shall be

deemed to have arisen "at the time the assessment is made," unless

"another date is specifically fixed by law."  Id. § 6322.  Such a

lien continues "until the liability for the amount so assessed (or

a judgment against the taxpayer arising out of such liability) is

satisfied or becomes unenforceable by reason of lapse of time."

Id.

      The Court finds that because the Government is entitled to

summary judgment on Count One, the existing tax liens upon all

property and rights to property belonging to Mr. Hatch are valid.

The Government is thus entitled to summary judgment on this aspect

of Count Two.  But whether these tax liens attach to the Annandale

properties depends on whether Mr. Hatch has any remaining property

interest in them.  As explained below, the Government has failed

to prove that he does.[5]

### 2. Attachment to 21 and 23 Annandale

      To show how the Court reaches its conclusion requires a brief

sketch of the relevant statutory structure and its relation to the

_____

      [5] This disposition accords with Mr. Hatch's position.  Def.
Richard H. Hatch Jr.'s Resp. Gov't's SUMF & Mot. Summ. J. 62, Dkt.
No. 75 ("Richard accepts [that] 'the United States has valid and
subsisting liens on all of Richard's property interests and rights
to property,' but NOT to 'property interests in 21 and 23 Annan-
dale.'").

parties.

When the Government seeks to enforce its valid tax liens, "it has at its disposal a 'formidable arsenal of collection tools.'" United States v. Verduchi, 434 F.3d 17, 19 (1st Cir. 2006) (quoting United States v. Rodgers, 461 U.S. 677, 683 (1983)). The Government has chosen to use the collection tool detailed in 26 U.S.C. § 7403(a). This provision allows the Government to enforce its tax liens against "any property, of whatever nature, of the delinquent [taxpayer], or in which he has any right, title, or interest." 26 U.S.C. § 7403(a). On this ground, the Government requests that the Court order the sale of 21 and 23 Annandale. Compl. ¶ E; see 26 U.S.C. § 7403(c).

But as previously noted, Ms. Hatch is the sole record-title holder of these properties. She and Mr. Hatch deny that Mr. Hatch has any remaining interest in either Annandale property. Answer & Countercl. 6-15; Mr. Hatch's Answer ¶¶ 42, 51-64, Dkt. No. 28. The title history for the respective properties is as follows:

- 21 Annandale. Mr. Hatch took sole record-title ownership of 21 Annandale in 1994. Gov't's SUMF ¶ 42. Then, in April 2005, he transferred half of his ownership interest to Ms. Hatch. Id. ¶ 44. The next month, he transferred his remaining interest in the property to Ms. Hatch. Id. ¶ 50. Ms. Hatch now has sole record-title to the property. See id.

14

¶¶ 50, 52-54, 57, 59, 60, 62-63.[6]

- 23 Annandale.  Mr. Hatch and Ms. Hatch took joint record-title ownership of this property in 2002.  Id. ¶ 70.  The next year, 2003, Mr. Hatch conveyed his ownership interest to Ms. Hatch.  Id. ¶ 82.  She now has sole record-title to the property.  See id. ¶¶ 82, 85-86, 89-91.[7]

The question then, "is whether and to what extent" Mr. Hatch still has any interest in either of the Annandale properties "to which the tax liens could attach."  Verduchi, 434 F.3d at 20 (citation modified) (quoting Aquilino v. United States, 363 U.S. 509, 512 (1960)).  Resolving the matter requires the Court to turn to state law.  See id. (quoting Aquilino at 512-13).

The Government claims that Mr. Hatch's transfers of his interests in 21 and 23 Annandale to Ms. Hatch were fraudulent and should be deemed void under the Rhode Island Uniform Voidable Transactions Act ("UVTA").  Gov't's Mot. 20-21, 26-43.  In the alternative, it asserts that regardless of whether the supposed transfers were fraudulent, Mr. Hatch remains the true owner such that Ms. Hatch only holds title as his "nominee."  Id. at 20-21,

---

[6] Ms. Hatch disputes aspects of these statements of fact but agrees that she has full record-title ownership of 21 Annandale. See Def./Counter Pl. Ms. Hatch's Resp. Gov't's SUMF & Mot. Summ. J. ¶¶ 50, 52-54, 59, 60, 62-63, Dkt. No. 72.

[7] Ms. Hatch again disputes parts of these statements of facts but does not dispute that she has sole record-title ownership of 23 Annandale.  Id. ¶¶ 82, 85-86, 89-91.

43.  Finally, the Government says that the Court should impose a resulting trust over 23 Annandale for the benefit of Mr. Hatch's creditors.  Id. at 21, 44.

The Government has failed to prove that it would prevail under any of its legal theories.

### a. Uniform Voidable Transactions Act Analysis

The Government argues that "the Court should void [Mr. Hatch's] transfers of his interests in the Annandale properties, pursuant to [the UVTA] and 'place the parties into the position they would have been in had no voidable transfer taken place.'" Gov't's Mot. 25-26 (brackets omitted) (quoting Verduchi, 434 F.3d at 25).  Under this theory, "as to 21 Annandale, [Mr. Hatch] would be considered the 100% owner, and as to 23 Annandale, [he] would be considered at least a 50% or joint owner with [Ms. Hatch]." Id. at 26.

The UVTA provides a creditor with two paths to voiding a debtor's fraudulent transfer of property.  First, a creditor may void a debtor's transfer "if the debtor made the transfer . . . [w]ith actual intent to hinder, delay, or defraud any creditor of the debtor."  R.I. Gen. Laws § 6-16-4(a)(1).  Courts consider multiple statutory factors when determining whether a debtor had the requisite intent.  Id. § 6-16-4(b).

Second, a creditor may void a debtor's transfer if "the debtor made the transfer . . . [w]ithout receiving a reasonably equivalent

value in exchange," and the debtor "[i]ntended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due." Id. § 6-16-4(a)(2). Traveling along either path, a creditor seeking to void a debtor's fraudulent transfer carries "the burden of proving the elements of the claim for relief by a preponderance of the evidence." Id. § 6-16-4(c).

The Government makes a case for why Mr. Hatch's transfer of 21 Annandale and partial transfer of 23 Annandale are voidable under either § 6-16-4(a)(1) or (a)(2). See Gov't's Mot. 26-31, 37-42. Ms. Hatch disputes several of the Government's asserted material facts.[8] Def./Counter Pl. Ms. Hatch's Resp. Gov't's SUMF & Mot. Summ. J. ("Ms. Hatch's DSMF") ¶¶ 52-56, 78, 81, 85-86, Dkt. No. 72. The Court need not determine whether these disputes are genuine. That is because to meet its burden at summary judgment, the Government must do more than just make its case on the merits; it must show "why the record is so one-sided as to rule out the prospect of the nonmovant prevailing." Wright & Miller § 2727.1. This it does not do.

The Government fails to carry its burden because the

---

[8] Both Ms. Hatch and Mr. Hatch further dispute these material facts in other filings, but the Court does not consider them because they do not comply with D.R.I. LR Cv 56. See Quintana-Dieppa v. Dep't of the Army, 130 F.4th 1, 8-12 (1st Cir. 2025); see generally Def./Counter-Pl.'s Mot. Summ. J., Dkt. No. 64; Def. Richard H. Hatch, Jr.'s Mot. Dismiss or Summ. J., Dkt. No. 65.

undisputed material facts in the record show that Ms. Hatch may well prevail at trial on one or more of her affirmative defenses. See Answer & Countercl. 7-9. The Court finds particularly persuasive Ms. Hatch's affirmative defense that as to the transferred Annandale properties, any potential "fraudulent conveyance claims are time-barred" by "the limitations period imposed on fraudulent conveyance claims." Id. at 8.

The UVTA limitations period for fraudulent conveyance claims asserted under § 6-16-4(a)(1) and (a)(2) is four years. R.I. Gen. Laws. § 6-16-9. There is an exception for claims brought under § 6-16-4(a)(1), but only for up to "one year after the transfer or obligation was or could reasonably have been discovered by the claimant." Id. § 6-16-9(1). And the Rhode Island Supreme Court has interpreted the discovery exception strictly, holding in an analogous property dispute that the creditor "reasonably could have discovered the [fraudulent] transfer as soon as the original quitclaim deed was recorded." Duffy v. Dwyer, 847 A.2d 266, 271 (R.I. 2004). Indeed, the Duffy court found that although "it [was] likely that [the debtor] transferred the property" with intent to defraud his creditor, the court was "bound by the statute of limitations that serves to protect parties regardless of their calumny." Id. at 272.

In this case, Mr. Hatch's transfers of 21 and 23 Annandale were completed by 2005 and 2003, respectively. Gov't's SUMF ¶¶

18

44, 50, 82.  Those transactions could have been discovered by the Government by a title search on the properties, especially considering that the Government began its criminal case against Mr. Hatch in 2005 (after prior investigation).  See Gov't's SUMF ¶ 16.  And the Government was undoubtedly aware of the transfers by April 6, 2010, when the IRS formally notified Mr. Hatch that it believed he had transferred the properties without adequate consideration.  Id. ¶ 31.

Yet the Government did not bring this lawsuit until September 2022, roughly seventeen and nineteen years after the respective transfers.  See generally Compl.  That falls thirteen and fifteen years after the UVTA's limitations period had run for each property transfer.  So any action to void the transfers under the UVTA appears conclusively time-barred.

It is true that Ms. Hatch did not raise her statute of limitations defense in her Response to the Government's Motion or in her own Motion for Summary Judgment, as she clearly should have. But by appropriately pleading this affirmative defense under Rule 8(c), she provided notice to the Government and the Court that she meant to put this defense in issue and thus preserved her opportunity to assert it at trial.  See Harris v. Sec'y, U.S. Dep't of Veterans Affs., 126 F.3d 339, 343 (D.C. Cir. 1997) (explaining that "[t]he pleading requirement of Rule 8(c) gives the opposing party notice of the defense of untimeliness and to argue before

the District Court various responses to the affirmative defense") (citing <u>Blonder-Tongue Lab. v. Univ. of Ill. Found.</u>, 402 U.S. 313, 350 (1971)).  For this reason, the Court cannot find that "the record is so one-sided as to rule out the prospect of a finding in favor of the nonmovant on the claim."  Wright & Miller § 2727.1 n.19.

### b. "Nominee" Theory Analysis

Next, the Government argues that as an alternative to voiding Mr. Hatch's transfers to Ms. Hatch of 21 and 23 Annandale under the UVTA, the Court could find that Ms. Hatch "is the mere nominee of [Mr. Hatch] and that [he] is the true and equitable owner of the Properties."  Gov't's Mot. 14; <u>see also</u> <u>id.</u> at 43.  Under this theory, if applicable, Mr. Hatch could be considered the sole owner of 21 Annandale and a joint owner of 23 Annandale.

The term "nominee," as used here, describes "[a] party who holds bare legal title for the benefit of others."  Black's Law Dictionary (12th ed. 2024).  Circuit precedent explains that "according to the IRS, 'as used in the federal tax lien context, a nominee is generally a third-party individual who holds legal title to property of a taxpayer while the taxpayer enjoys full use and benefit of that property.'"  <u>Berkshire Bank v. Town of Ludlow</u>, 708 F.3d 249, 251 n.3 (1st Cir. 2013) (citation modified) (quoting Internal Revenue Manual 5.17.2.5.7.2(1)).  Yet the question of "[w]hether a particular asset belongs to a taxpayer," such that a

federal tax lien may attach, "is a question of state law." Id. at 251-52 (alteration in original) (quoting Dalton v. Comm'r of Internal Revenue, 682 F.3d 149, 157 (1st Cir. 2012)).

The Government provides the Court with a list of factors to use in making a "nominee" determination. Gov't's Mot. 24-25 (first citing Berkshire Bank, 708 F.3d at 253-54; and then citing Dalton, 682 F.3d at 158). These factors overlap significantly with the UVTA factors listed in R.I. Gen. Laws § 6-16-4(b). Id. Hence the Government re-argues much of its UVTA case under this theory. Id. at 43. The applicable material facts asserted by the Government are disputed by Ms. Hatch. Ms. Hatch's DSMF ¶¶ 52-56, 78, 81, 85-86. As with the UVTA analysis, the Court need not determine whether these disputes are genuine at this time because the Government does not show that "the record is so one-sided as to rule out the prospect of the nonmovant prevailing." Wright & Miller § 2727.1.

The Government's argument falls short, again because the undisputed material facts in the record show that Ms. Hatch may well prevail at trial on one or more of her affirmative defenses. Relevant to this legal theory, the Court finds persuasive Ms. Hatch's contentions that (1) "Rhode Island law does not recognize or support the nominee theory asserted by the [Government]," and (2) the Government's enforcement action "is barred by the doctrine of laches." Answer & Countercl. 8.

As to the validity of its nominee theory, the Government concedes that "Rhode Island law does not expressly recognize the 'nominee' theory as such." Gov't's Mot. 24. And it does not provide any examples of Rhode Island case law that suggest an implicit recognition of the theory under any other name. See id. Instead, it simply asserts that "no state within the First Circuit would endorse immunizing property of a debtor merely by having a trusted relative or friend hold legal title." Id. Setting aside the fact that this statement overlooks other avenues under Rhode Island law to void fraudulent conveyances, such as the UVTA, the Government makes no attempt to show a doctrinal root in Rhode Island jurisprudence.

The Government's reliance on federal precedent such as Dalton and Berkshire Bank is misplaced. In Dalton, the First Circuit upheld the IRS's application of the nominee theory in a collection due process hearing.[9] 682 F.3d at 156-59. The Dalton court noted explicitly that "Maine law provides the substantive rules of decision," and that "[i]n connection with real property, Maine recognizes the nominee doctrine." Id. at 157 (citing Atkins v. Atkins, 376 A.2d 856, 859 (Me. 1977)). Because Maine law already recognizes the legal theory, but does not "fully delineate [its]

---

[9] A collection due process hearing is an elective right of a taxpayer granted by statute related to a tax levy being made on his or her property or right to property. 26 U.S.C. § 6330.

contours," the court found it reasonable for the IRS to look "to case law from other jurisdictions to fill the void and illuminate Maine's nominee doctrine." Id. In no way did the Dalton court's decision bless a federal court to create a state doctrine on its own initiative.

Similarly, in Berkshire Bank, the First Circuit affirmed the district court's application of the nominee theory, under Massachusetts law, in an action to enforce a federal tax lien. 708 F.3d at 250-54. The Berkshire Bank court noted the above discussed aspect of the Dalton court's decision. Id. at 253. And it "assume[d], without deciding," that Massachusetts law supported the nominee doctrine only because the taxpayer did not contest the point and so "waived any claim to the contrary." Id. at 252 (citing Farris v. Shinseki, 660 F.3d 557, 562 n.5 (1st Cir. 2011)). This contrasts with Ms. Hatch's position in this case.

Yet even if the nominee theory did apply, the undisputed material facts in the record show Ms. Hatch's laches defense is also viable. She says this defense applies "because, despite notice of [her] interests in the properties, the [Government] failed to exercise due diligence in failing to promptly institute an action to foreclose its purported liens, which has caused prejudice to [her], the owner of both properties at issue." Answer & Countercl. 8.

In Rhode Island, "[l]aches is an equitable defense that

precludes a lawsuit by a plaintiff who has negligently sat on his or her rights to the detriment of a defendant." Hazard v. E. Hills, Inc., 45 A.3d 1262, 1269 (R.I. 2012) (quoting O'Reilly v. Town of Glocester, 621 A.2d 697, 702 (R.I. 1993)). A laches defense requires the Court to consider whether (1) the plaintiff negligently delayed suing, and (2) the defendant was prejudiced by the delay. Id. at 1270 (citing Sch. Comm. of Cranston v. Bergin-Andrews, 984 A.2d 629, 644 (R.I. 2009)).

While there is "no hard and fast rule" for determining whether sufficient prejudice has been shown, "[l]aches bars a stale cause of action when an unexplained or unjustified delay in asserting the claim is 'of such great length as to render it difficult or impossible for the court to ascertain the truth of the matters in controversy and do justice between the parties.'" Id. at 1271 (quoting Fitzgerald v. O'Connell, 386 A.2d 1384, 1389, 1387 (R.I. 1978)).

The record supports laches as a viable defense. As noted above, roughly seventeen and nineteen years passed between the property transfers at issue in this lawsuit. And Ms. Hatch can likely show a prejudicial impact upon her from the delay. See Ms. Hatch's DSMF ¶¶ 55, 56, 87-88 (naming, for example, having paid off existing mortgages on the 21 Annandale, taken out new mortgages on both properties, and taken out multiple home equity lines of credit on 23 Annandale).

While Ms. Hatch did not press her affirmative defenses in her Response to the Government's Motion or in her own Motion for Summary Judgment, she notified the Government that they were in issue with her Rule 8(c) pleading. Answer & Countercl. 8. The Government, in its Motion, presents undisputed material facts which make clear that these defenses would be viable ones at trial; yet it makes no attempt to address them. Thus, the Government does not meet its burden to show that "the record is so one-sided as to rule out the prospect of a finding in favor of the nonmovant on the claim." Wright & Miller § 2727.1 n.19.

### c. Resulting Trust Analysis

Finally, the Government argues that "the Court should impose a resulting trust over the 23 Annandale property." Gov't's Mot. 44. It pursues its resulting trust theory, "to the extent that all of the purchase money was provided by" Mr. Hatch. Compl. ¶ D. Under this rationale, the original fifty percent ownership interest that Ms. Hatch assumed in 2002 would have been held in this resulting trust.

The resulting trust doctrine is firmly rooted in Rhode Island law. See Carrozza v. Voccola, 962 A.2d 73, 76-78 (R.I. 2009); Reynolds v. Blaisdell, 49 A. 42, 43-45 (R.I. 1901). The resulting trust that the Government seeks to impose over 23 Annandale "is known more specifically as a 'purchase money resulting trust.'" Carrozza, 962 A.2d at 76 (citing George T. Bogert, Trusts § 74 at

25

266 (6th ed. 1987)).  Although such a trust "may be implied in fact without the existence of an express agreement," the party asserting that the trust exists must present "clear and convincing [evidence] and demonstrate that at 'the instant the estate passe[d],' a contributor of the price for the purchase of property intended that another party, who took actual title to the property, hold it in trust for the benefit of the contributor." Id. (second alteration in original and internal citations omitted) (first citing Bogert at 267; then citing Cetenich v. Fuvich, 102 A. 817, 821 (R.I. 1918); then quoting Campanella v. Campanella, 68 A.2d 85, 88 (R.I. 1949); and then citing Cutroneo v. Cutroneo, 98 A.2d 921, 923 (1953)).

The Government argues that Mr. Hatch "contributed the purchase money for 23 Annandale and record title was eventually fully placed in [Ms. Hatch's] name alone, though the record demonstrates that [Mr. Hatch] intended to retain beneficial ownership of the property."  Gov't's Mot. 44.  This summary argument does not satisfy the Government's burden at summary judgment.

The Government's argument fails to meet its burden for two reasons: it does not sufficiently make its affirmative case for a resulting trust and, for the same reasons discussed above, it does not address Ms. Hatch's viable laches defense, which is apparent on the undisputed record and equally applicable here.  The Court

26

need not repeat its laches analysis but will address the flaw in the Government's affirmative case.

For one, Ms. Hatch disputes the material facts about who supplied the purchase money for 23 Annandale. Ms. Hatch's DSMF ¶¶ 81, 85. This dispute appears to be genuine, and resolving it in the Government's favor would require the Court to draw impermissible inferences at this stage. See Quintana-Dieppa, 130 F.4th at 7.

But the bigger problem with the Government's case is that it presents no evidence that Mr. Hatch intended, "at 'the instant the estate passe[d],'" for Ms. Hatch to hold it in trust for his benefit. See Carrozza, 962 A.2d at 76 (alteration in original) (quoting Campanella, 98 A.2d at 88). The relevant date for this transaction is May 9, 2002, when the prior owners "conveyed record title" to 23 Annandale to the Hatches jointly. Gov't's SUMF ¶ 70. As to the parties' intent at that time, the record appears to show that both parties intended for Ms. Hatch to own the property for her own benefit and not for Mr. Hatch's benefit. See id. ¶ 74; Gov't's Mot. Ex. 16, at 20-25.

In sum, the Government's failure to make its affirmative case and account for Ms. Hatch's viable laches defense means that the Government again does not show that "the record is so one-sided as to rule out the prospect of a finding in favor of the nonmovant on

the claim." Wright & Miller § 2727.1 n.19.

* * *

As the Rhode Island Supreme Court noted in an alleged fraudulent real estate conveyance case: "Time is money." Duffy, 847 A.2d at 267 (quoting Benjamin Franklin, Advice to a Young Tradesman, in Bartlett's Familiar Quotations 310 (16th ed. 1992)). A party who waits too long to bring its case can lose its money and its lawsuit under state law, even when it may have the better argument on the merits. See id. at 272. In this case, the passage of time appears to bar any claim that the Government could assert under Rhode Island law to show that Mr. Hatch retains any interest in the Annandale properties. This dispositive issue is apparent independent of the other flaws in the Government's legal theories.

The Government has therefore not met its burden to show that Mr. Hatch has any remaining interest in either 21 or 23 Annandale reachable under its asserted state law theories.[10] Accordingly, the Court cannot find that the Government's tax liens are valid to the extent that they purport to attach to these properties, and

---

[10] As described in this Memorandum and Order, the Court's determination on this dispositive issue is almost entirely based on questions of law for which there are no material facts in genuine dispute. For this reason, the Court perceives that the Government likely cannot meet its burden on this issue. As such, summary judgment may be warranted against the Government on this aspect of Count Two of its Complaint. The Court will issue a text order to this effect together with this Memorandum and Order, pursuant to Federal Rule of Civil Procedure 56(f)(3).

the Government is not entitled to summary judgment on this aspect of Count Two or on Ms. Hatch's Counterclaim.

## III. CONCLUSION

For these reasons, the Court concludes that:

- The Hatches are not entitled to summary judgment on any of the claims addressed in their Motions;

- the Government is entitled to summary judgment on Count One of its Complaint;

- the Government is entitled to summary judgment on Count Two of its Complaint as to the validity of its tax liens against Mr. Hatch's property and rights to property;

- the Government is not entitled to summary judgment on Count Two of its Complaint as to the validity or enforceability of its tax liens against 21 and 23 Annandale; and

- the Government is not entitled to summary judgment on Ms. Hatch's Counterclaim.

In accordance with these conclusions, the Court DENIES Ms. Hatch's Motion, Dkt. No. 64; DENIES Mr. Hatch's Motion, Dkt. No. 65; and GRANTS IN PART and DENIES IN PART the Government's Motion, Dkt. No. 63.


IT IS SO ORDERED.

_____
William E. Smith
Senior District Judge
Date: June 6, 2025